UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

CHRISTINE M. GILROY,
Debtor.
_____/

Case No. 16-21419-dob
Chapter 13 Proceeding
Hon. Daniel S. Opperman

OPINION REGARDING DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE WHY
CREDITORS AND THEIR ATTORNEY SHOULD BE HELD IN CONTEMPT AND
<u>ASSESSED SANCTIONS FOR VIOLATING THE AUTOMATIC STAY</u>

The Debtor, Christine Gilroy, requests that this Court find two of her creditors, Otis and Tracy Fahl, and their attorney, Michael Corcoran, in contempt of Court for violating the automatic stay, as well as assess compensatory and punitive damages against these individuals for violation of the automatic stay. Mr. and Ms. Fahl, as well as Mr. Corcoran, deny that they violated the automatic stay and likewise deny that they are responsible for any damages owed to Ms. Gilroy. After a pretrial conference, the Court held an evidentiary hearing on December 17, 2018 and heard the testimony of Rick Robbins, Kenneth Gordon, Joni Fixel, and Tracy Fahl, as well as statements from Ms. Gilroy and Mr. Corcoran. After careful consideration of the testimony at the evidentiary hearing, as well as a review of the exhibits offered by the parties, the Court makes the following findings of fact and conclusions of law.

Findings of Fact

Ms. Gilroy's daughter suffered a traumatic accident requiring continuing medical treatment and therapy. One beneficial therapy for her involved horses, so Ms. Gilroy began developing an equine therapy program in northern Michigan. To that end, she acquired the necessary horses and facility to engage in medical therapeutic treatment. Mr. and Ms. Fahl were instrumental in providing financial resources and the facility, which later became part of an enterprise operated by

1

the Mid-Michigan Equestrian Center ("MMEC"). MMEC was a separate non-profit organization that provided more extensive equine therapy but was operated by Ms. Gilroy. Unfortunately, MMEC financially floundered and ultimately filed a Chapter 11 proceeding in the Western District of Michigan. In that proceeding, MMEC, through its representative, Ms. Gilroy, represented to the Bankruptcy Court that it owned a number of horses and provided a list of these horses. A majority of the creditors of MMEC, including Mr. and Ms. Fahl, opposed the continuation of the Chapter 11 proceeding of MMEC and likewise took adverse positions to that of Ms. Gilroy. The MMEC bankruptcy was dismissed in November 2015. After dismissal of the Chapter 11 proceeding, Mr. and Ms. Fahl exercised their state court remedies and obtained a judgment against MMEC and Ms. Gilroy. In particular, Mr. and Ms. Fahl requested the necessary writs to allow a court officer, Mr. Robbins, to seize property of MMEC which included certain horses and office equipment. Prior to the horses and office equipment being sold, however, an arrangement was made in which Mr. and Ms. Fahl received sufficient money to release the horses and office equipment.

Ms. Gilroy filed a Chapter 13 petition with this Court on August 7, 2016. She disclosed in her Schedules ownership of nine horses with a value of $6,300 and miscellaneous household items valued at $800. She also listed certain bedroom sets, kitchen appliances, and three living room sets with values of $3,000, $1,200, and $1,800 respectively. Her first meeting of creditors was set for September 8, 2016.

Mr. and Ms. Fahl filed a Motion for Relief from Stay on August 19, 2016. In their motion, Mr. and Ms. Fahl requested that this Court lift and modify the automatic stay to allow for the continuation of the state court action, as well as to allow for the resolution of various contempt of court issues that Mr. and Ms. Fahl believed were still open as to Ms. Gilroy.

Also, in the month of August, Mr. and Ms. Fahl obtained a writ directing Mr. Robbins to seize property of MMEC. On September 1, 2016, Mr. Robbins executed the writ and seized office equipment and horse stall mats, as well as four horses identified as Big Red, Levi, Silver, and Dayne. Mr. Gordon was at the horse stable when the horses were seized, and he advised Mr. Robbins that he understood that these horses were owned by Ms. Gilroy, but he was not given any additional information or documents to support his understanding, so Mr. Robbins seized the horses. One week later, the Debtor's first meeting of creditors was held in Bay City, Michigan, and Mr. Corcoran appeared on behalf of Mr. and Ms. Fahl, as did the Debtor and her attorney, Ms. Fixel. At the first meeting of creditors, the normal issues were discussed and, the next day, the Debtor filed a response to the Motion for Relief from Stay of Mr. and Ms. Fahl. This pleading did not raise any issue as to the horses or the particular items of office equipment that are now the subject of the Debtor's motion. The Court set a hearing for the Motion for Relief from Stay on September 22, 2016, but the parties agreed to adjourn that hearing to October 13, 2016. The Court held a hearing regarding the Motion for Relief from Stay on October 13, 2016 and adjourned and continued the hearing to allow the parties to finalize an appropriate order. By November 2016, the parties were able to agree on the form of an order and this Court entered an Order Regarding Real and Personal Property and Lift of Stay on November 23, 2016, but continued the stay as to the enforcement of any money judgment. Subsequently, the Debtor filed a Motion to Dismiss on December 7, 2016, and her Chapter 13 case was dismissed on January 9, 2017.

Thereafter, the Debtor filed another petition with this Court on January 22, 2017 seeking relief under Chapter 13. The Debtor voluntarily converted her Chapter 13 proceeding to Chapter 7 on February 12, 2017 and she received a discharge on June 8, 2017. On April 26, 2018, the Debtor filed a Motion for Order to Reopen Case to allow her to file the instant motion. After a

response was filed, the Court held a series of hearings and status conferences to administer this matter.

At the December 17, 2018 evidentiary hearing, Mr. Robbins testified that as a court officer he is very careful to not violate the automatic stay and inquired numerous times as to the exact ownership of the property that he seized on September 1, 2016. He took the necessary steps to satisfy himself that the property in question was not owned by Ms. Gilroy, but instead by MMEC. Buttressing his understanding were the documents presented in the MMEC bankruptcy, which disclosed that the four horses at issue were MMEC horses as of November 2015, when Schedules were filed in the MMEC case. Mr. Robbins acknowledged that Mr. Gordon did tell him that he believed the horses were Ms. Gilroy's, but neither gentleman had any evidence to support Mr. Gordon's understanding.

In response, Ms. Gilroy stated that after the horses and office equipment were seized in 2016, she paid Mr. and Ms. Fahl money to have the horses and office equipment returned. Thereafter, she testified that she transferred the horses and office equipment to her, but she did not inform anyone of that transfer, in particular, neither Mr. and Ms. Fahl or Mr. Corcoran. Ms. Gilroy testified that she was greatly distressed when the horses and office equipment were again seized and that she was in communication with one of her attorneys, Mr. Huggins, about the September 1, 2016 seizure. Ms. Gilroy also testified that she suffers significant emotional distress and an interruption in her business such that she has not been able to function effectively without the horses and office equipment. In particular, there are a set of horse stall mats that Ms. Gilroy focused on as being necessary for her equine operation and that she repeatedly requested the return of these mats. Mr. Robbins testified that he was aware of the mats, but that he was also informed

4

that the mats were evidence in a continuing criminal investigation regarding Ms. Gilroy, so he left the mats for safe keeping with the appropriate authorities.

Ms. Gilroy also testified that she has incurred damages for the loss of the horses and office equipment and that she is entitled to emotional distress damages as a result of the violation of the automatic stay by Mr. and Ms. Fahl and Mr. Corcoran.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157, and E.D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Applicable Law

11 U.S.C. § 362(a) automatically stays all proceedings against the debtor as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of this case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . .

A bankruptcy petition operates as a stay of "any proceeding to recover a claim against the debtor" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The purpose of the automatic stay is to give the debtor a "breathing spell from his creditors." *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000). The legislative history indicates that the stay provides a debtor broad protection from his

5

creditors by stopping all collection efforts, all harassment, and all foreclosure actions. *Id*. (citation omitted).

A party violates the automatic stay by taking any action prohibited by Section 362(a) after receiving notice of a bankruptcy filing. *Id*. "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997) (quoting *In re Wagner*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)). To show liability under Section 362(k), the debtor need only show actual notice of the bankruptcy and an act in violation of the stay. "Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages." *Daniels*, 206 B.R. at 445. The automatic stay requires creditors to take affirmative steps to halt or reverse any pending suits or collection efforts begun prior to bankruptcy, including garnishment, repossession of a vehicle, and foreclosure of a mortgage or lien. *Banks*, 253 B.R. at 30.

An individual debtor can recover damages for willful violation of the stay under Section 362(k), which provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

A debtor requesting actual damages must offer adequate evidence to support the determination and calculation of damages incurred by the debtor. These damages may also include incidental costs, such as lost time from work, travel costs, and daycare expenses. These items of damages should be awarded if the Court is satisfied these are indeed actual damages.

Punitive damages may be awarded, but in the limited context of when the Court is struck by the egregious behavior of the creditor and seeks to deter such conduct in the future, the Court believing a risk for repeat conduct realistically exists. This determination as to punitive damages will depend on the evidence presented at the hearing; bare allegations in the pleadings alone generally being insufficient.

Analysis

While there is no doubt that Mr. and Ms. Fahl acted after the August 17, 2016 bankruptcy of Ms. Gilroy, their actions were directed to assets of MMEC. First, the horses and office equipment in question were detailed in the MMEC Chapter 11 proceeding as property of MMEC. After the MMEC Chapter 11 was dismissed, Mr. and Ms. Fahl took appropriate action to seize this property as allowed under state law. After receiving payment, Mr. and Ms. Fahl waited some time as other proceedings were occurring in state court involving Ms. Gilroy. Seeing that there was no resolution of these proceedings, Mr. and Ms. Fahl again decided to seek to recover the remaining amount of their judgment as to MMEC. Ms. Gilroy may have transferred the horses and office equipment to herself after the spring of 2016, but her Schedules do not report any office equipment or similar equipment that is the subject of this motion. While her Schedules do disclose nine horses, the horses are not described in any detail and the MMEC filing described numerous horses owned by Ms. Gilroy, none of which are the horses named in the instant Motion. From a closer view of the Debtor's Schedules, one would not, and the Court cannot, conclude that the property seized on September 1, 2016 was property of the Debtor.

Moreover, the Debtor's complete failure to raise this issue either at the first meeting of creditors, held one week after the property was seized, or in her response to the Motion for Relief from Stay, filed eight days after the property was seized, adds further weight to the Court's

7

conclusion that the property seized on September 1, 2016 was not her property. Her current position was not stated throughout September, October, and November 2016 when the parties were negotiating the Motion for Relief from Stay of Mr. and Ms. Fahl and the Court was considering the position of the respective parties. The final factor considered by the Court during the Chapter 13 proceeding is the Debtor's ultimate agreement for the entry of an order regarding the automatic stay and her subsequent dismissal of the case a few months later. None of these actions or inactions are consistent with a Debtor who was so wronged as the Debtor claimed approximately two years later at the December 17, 2018 evidentiary hearing.

For these reasons, the Court concludes that the property seized on September 1, 2016 by Mr. Robbins was not the Debtor's property. As such, there was no violation of the automatic stay and therefore no actual or punitive damages are warranted in this case. If the Court is incorrect that the property seized was not that of the Debtor, the lack of communication of the Debtor's ownership in that property prohibits the award of either actual or punitive damages. First, the only witness who testified contemporaneous with the seizure of the property was Mr. Gordon. While Mr. Gordon is a credible witness, he lacked the sufficient knowledge, or more importantly, documents, to evidence the Debtor's interest in the horses. Second, the award for damages for a violation of the automatic stay approximately two years after the event is speculative at best. Finally, given the Debtor's failure to communicate her interest in the property immediately upon seizure compels this Court to conclude that neither Mr. and Ms. Fahl or Mr. Corcoran engaged in egregious conduct warranting any punitive damages.

While making these findings and conclusions, the Court does note that it finds Ms. Gilroy to be a sympathetic litigant and witness. Her family has suffered horrendous damage and injuries as a result of her daughter's unfortunate accident, but she has continued on. That being said, the

8

factual basis before the Court after close examination of the facts compel the Court to conclude that Mr. and Ms. Fahl and Mr. Corcoran did not violate the automatic stay. Accordingly, the Court denies Ms. Gilroy's motion. Counsel for Mr. and Ms. Fahl is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Not for Publication**

**Signed on February 21, 2019**



/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge