# UNITED STATES BANKRUPTY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:                                          Case No. 16-21419

Christine M. Gilroy,                            Chapter 13

       Debtor                           Hon. Daniel S. Opperman

### MOTION FOR RECONSIDERATION PURSUANT TO FEDERAL RULE 59 (e)
### MADE APPLICABLE BY FED. R. BANKR. P. 9023

NOW COMES Christine Gilroy, Debtor in pro per, respectfully request this court reconsider its Order entered March 12, 2019 denying Motion for order to show cause (doc # 68) Pursuant to Fed. R. Civ. P. 59 (e), made applicable by Fed. R. Bankr. P. 9023.

### STATEMENT

1. On December 17, 2018, this Court heard oral argument on Debtor's Motion Seeking Damages for Willful Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Motion") brought against Otis Fahl, Tracy Fahl, and Michael Corcoran.

2. This Court rendered an opinion in the above entitled matter on February 21, 2019 and further requested that the Defendants Counsel prepare an order consistent with the opinion and the entry of order.

3. This court entered its order denying Debtors' Motion for order to show cause (doc # 68) on March 12, 2019.

### APPLICABLE AUTHORITY

4. Fed. R. Bank. P. 9023 provides that a motion to alter or amend a judgment shall be filed no later than 14 days after entry of the judgment.

5. Federal Rule of Civil Procedure 59(e) made applicable to this proceeding by Fed. R. Bankr. P. 9023. Of which Debtors Motion is filed timely according to Federal Rule of Civil Procedure 59(e) made applicable to this proceeding by Fed. R. Bankr. P. 9023.

6. Reconsideration is available: (1) where the judgment is based on a clear error of law; (2) there is newly discovered or previously unavailable evidence; (3) there is an intervening change in controlling law; and (4) to prevent manifest injustice. *Frontier Energy, LLC v. Aurora Energy, Ltd (In re Aurora Oil & Gas Corp.), 439 B.R. 674, 681-82 (Bankr. W.D. Mich. 2010)* (citations omitted).

7. <u>28 U.S. Code § 1334</u>

   (e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—
   (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of

property of the estate; Also, the Court has authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105.

8.  The Debtor respectfully request this Court reconsider its decision as Debtor believes this Court misunderstood the "Facts" as presented, and further to prevent clear error of law and prevent manifest injustice.

### UNDISPUTED FACTS

9.  There is no dispute that the Defendants (Creditors) had notice of and were in fact aware of the Debtors' Bankruptcy filing.

10. The Kalkaska County 87-B District Court had notice of the Debtors' Bankruptcy filing and Administratively closed the case due to the stay on August 9, 2016. (Exhibit Signed Order)

11. The Defendants continued judicial proceedings on an administratively closed case # 13-17182-SP-2 by filing the Ex Parte Motion for Entry of Order Allowing Court Officer Access to Storage Unit 101 to execute writ to seize property on August 15, 2016. Mid Michigan Equestrian Center, Inc, (MMEC) and Christine O'Connell (aka Gilroy), were listed as the Defendants in the Ex Parte Motion.

12. The writ to seize property listed Mid Michigan Equestrian Center, Inc. and Christine O'Connell (aka Gilroy) as the Defendants. When this writ is presented to Court Officer Robbins, he executes according to the order presented to him, as he testified to on December 17, 2018.

13. The Defendants did in fact execute the writ to seize property issued on September 1, 2016 against Michigan Equestrian Center, Inc. (MMEC) and Christine O'Connell (aka Gilroy) listed on Writ as the Defendants.

14. Gilroy (Debtor) did in fact list 9-horses in her Bankruptcy schedules valued at $6,300.00.

15. Gilroy (Debtor) did in fact purchase Oak furniture from the Fahl's in 2010 and paid in full in 2013 which was seizure on September 1, 2016.

### PROCEDURAL FACTS

16. The Defendants filed *Motion for Relief from Stay* on August 19, 2016. (doc 19)

    a)  This motion clearly states that this Court has jurisdiction over this matter pursuant to 28 USC §§ 1334 and 157 (a) and (b). and state this matter is a core proceeding under 28 USC § 157(b)(2)(G).

    b)  Defendants claim that Lifting of the stay as to the Circuit Court litigation and appeal is appropriate for cause under 11 USC §362(d)(l) since the unresolved litigation arguably operates as a cloud on the property.

    c)  Moreover, the Stay does not operate as a stay on the litigation as it relates to the now "defunct" nonprofit operated by Debtor.

d) If Debtor decides not to pursue the above litigation, then a Lift of Stay would not be necessary.

e) If Debtor wishes to pursue the litigation, then completing the litigation would be essential to the effective reorganization of the Estate.

The Defendant filed their proof of claims in the amount of $28,628.00 which was filed on August 19, 2016. These claims include the judgment of which they executed writ to seize property on September 1, 2016. Clearly acknowledging that the appeal was pending and that they needed to get this court's approval to move forward with "any" litigation between MMEC and Gilroy.

The reference of Debtor and her "DEFUNCT" Nonprofit leads the question as to the belief that the nonprofit no longer existed and to the word "her" believing that the nonprofit was Debtors, so in essence believing that the assets that they claim belong to MMEC, by these statements alone leads one to believe, they knew they were seizing Gilroy's assets. (definition of "Defunct" defunct company an institution that has been created to conduct business that **does not exist or has been dissolved,** (*Trans Legal dictionary*))

Also noted, the attached exhibits:

(1) A Judgment in Kalkaska County District Court Judgment on a **defaulted Tax Note** in the amount of **$7,776.36** in favor of Otis Fahl, III and Tracy Fahl. Said Judgment is attached as **Exhibit C.** The Judgment is also entered against a co- debtor, the Mid Michigan Equestrian Center, Inc., a Michigan Non-Profit that was as stated above was operated by Debtor.

(2) A Judgment for **Attorney Fees and Costs** entered in favor of Otis and Tracy Fahl against Debtor and the Mid- Michigan Equestrian Center Inc. with a remaining balance of **$9,985 1.64** following hearings to enforce a Settlement Agreement resulting in the Court ordering that a Deed being held in Escrow by a Title Company pursuant to a prior Settlement Agreement should be turned over to the Fahl's, and following a Landlord Tenant matter to evict See Attached as **Exhibit D.**

(3) Also, is a Judgment of Contempt entered in the same matter as (b) against Debtor and the Non-Profit in favor of the Fahl's for money damages violations of Restraining Orders and removal of property, and also requiring the delivery and installation of a heating system wrongfully removed. The Contempt has not been purged. (See attached **Exhibit E)**

**Note:**

*Exhibit D is the judgment for the writ to seize and subject of this motion.*

*Exhibit E is also included in the debtors Chapter 7 case of which is still pending in an adversary matter.*

17. On September 22, 2016, the Defendants filed *Objection to conformation* (note: this was filed just 21 days following the seizure of September 1, 2016, and the seizure sale took place on September 13, 2016 which is the subject of this dispute). (doc 33)

(1) Defendants are claiming that the Debtor is still owing $9,851.64. (omitting the decrease from the seizure sale of which should reflect $9,055.84 owing).

(2) Defendants acknowledge a dispute of ownership of the horses listed in Debtors schedule of which they stated on the record, that they were not aware of a change in ownership until Debtor filed her motion regarding the violation of the automatic stay. (pg. 5 c)

(3) Further the Defendants were claiming that the Debtors Chapter 13 was an attempt to avoid collection of state court matters and attempting to transfer property which clearly shows they were aware of the transfer of ownership. (pg. 5 e)

This statement that the Former nonprofit acknowledges the presumption that MMEC did not exist. At no point did the Defendants acknowledge the seizure of the property or the reduction in payment of the judgment for attorney fees of which was the subject of the seizure.

This was Debtors right under the bankruptcy code to have a breathing spell to reorganize and develop a plan to repay these judgments, if following the appeal process, they were still valid, of which the debtor was deprived.

18. On October 16, 2016, hearing was held on *Motion to lift stay* making it clear that the appeal of the matter pertaining to all of the judgments were addressed along with the Civil matter, this court was clear regarding the issues and that all these matters were stayed. Attorney Fixel made it clear that the Fahl's continued to harass Gilroy. Mr. Corcoran stated on the record as to the attorney fees were a part of the settlement agreement which was part of the appeal.

Mr. Corcoran stated on the record (rec. doc 40 at 25.46) *"The appeal Bond only stays collection activity, I can't collect against any of these judgments because of this stay."* At no point did Mr. Corcoran state that oh wait, I collected some money from what they state was seizure of MMEC assets on 9/1/16. In fact, he clarified that he could not pursue any collection against these judgments due to the stay.

19. Again, on November 16, 2016, the Defendants filed a *2nd Objection to conformation*.

    a) The Debtor is indebted to movants as follows:

        (1) A Judgment in Kalkaska County District Court Judgment on a defaulted Tax Note in the amount of $7,776.36 in favor of Otis Fahl, III and Tracy Fahl. Said Judgment is attached as Exhibit D. The Judgment is also entered against a co- debtor, the Mid Michigan Equestrian Center, Inc., a Michigan Non-Profit that was as stated above was operated by Debtor.
**(to clarify, this judgment was entered on 5/23/16)**

        (2) A Judgment for Attorney Fees and Costs entered in favor of Otis and Tracy Fahl against Debtor and the Mid- Michigan Equestrian Center Inc. in the amount of $9,851.64 following hearings to enforce a Settlement Agreement resulting in the Court ordering that a Deed being held in Escrow by a Title Company pursuant to a

prior Settlement Agreement should be turned over to the Fahl's and following a Landlord Tenant matter to evict See Attached as Exhibit E.
**(to clarify, this judgment was entered on 5/23/16)**

    (3) A Judgment of Contempt entered in the same matter as (b) against Debtor and the Non-Profit in favor of the Fahl's for money damages in the amount of $11,000 for violations of Restraining Orders and removal of property, and also requiring the delivery and installation of a heating system wrongfully removed. The Contempt has not been purged. (See Attached F)
**(to clarify, this judgment was entered on 6/24/16)**

Again, several months later the <u>Defendants failed to acknowledge the seizure of the property or the reduction in payment of the judgment for attorney fees of which was the subject of the seizure.</u> These judgments were obtained well after the sale of the assets to debtor by MMEC, which included the horses. (Exhibit 67 entered at evidentiary hearing-affidavit of Dawn Martin) Further there were no other outstanding judgments pending at the time of the sale.

20. On November 23, 2016, this court entered an order regarding the *lift of stay* stated: (doc 46)

    IT IS HEREBY ORDERED THAT the real and personal property located at 5629 Way Rd, NW, Rapid City, MI 49676, Tax ID number 004-027-006-10, is not property of the estate under 11 USC § 541.

    IT IS FURTHER ORDERED THAT the automatic stay shall be lifted as to the Contempt Order in the Kalkaska County District Court matter, 16-19141-LT-2, as it relates to return and installation of the heating system. However, **the stay is not lifted as to the money judgment portion of the Order.**

    This order did not include a lift of stay pertaining to the 13-17182-SP-2 case of which they executed a writ to seize property under and is the subject of this matter.

21. The Debtor filed *Corrected-Motion to Dismiss Chapter 13* Case on January 6, 2017 and refile under chapter 7 due to the <u>emerging complexities</u> of the case. This court entered an *Order on Corrected Motion to Dismiss Chapter 13* as such on January 9, 2017and further stating that Debtor may timely refile her bankruptcy case. (Doc 51 and 53)

22. Debtor refiled Chapter 13 on January 22, 2017, case number 17-20100.

23. March 16, 2017, the Defendants filed proof of claim against Debtor, again claiming the same identical debt owing as in the Chapter 13 of which <u>does not</u> reflect the seizure and payment from the sale which took place in September of 2016. (case #17-20100 Claim 2-1)

    a) The statement on form 410 that was signed by Mr. Corcoran on March 16, 2017states:

    <u>Form 410 Proof of Claim-Part 3:</u>

    I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

    I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

> I declare under penalty of perjury that the foregoing is true and correct.
>
> A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. *18 U.S.C. §§ 152, 157 and 3571.*

Clearly, Mr. Corcoran was in violation of this requirement.

24. March 16, 2017, Defendants again filed *Motion for Relief from Stay*, essentially filing the exact same thing, making no mention of the partial set a side of the balance owed from the writ of execution and sale. (doc 28 in case 17-20100)

25. On May 8, 2017, The Defendants filed an *Adversary Action* against Debtor in her case 17-20100 of which they are claiming the same amounts owing on these very judgments which was assigned case# 17-02041. (doc 44 case 17-20100)

26. On June 20, 2017, this court entered an *Order regarding Relief from Stay* stipulated between all parties, which states: (17-20100 Doc 70)

> The automatic stay is lifted with respect to the pending Circuit Court matter in Kalkaska County, being case number 16-1230-CZ and the Appeal from the District Court Judgment and Order being case number 16-12167- AV pursuant to 11 USC §362(d)(1) and (2).

> That the automatic stay is lifted with respect to enforcement of the non-monetary provisions of the Contempt Judgment entered against **Debtor and the Mid-Michigan Equestrian Center, Inc.**

This order clearly states that the Defendants could not collect monetarily against any judgments against Debtor and MMEC and further did not include a lift of stay pertaining to the 13-17182-SP-2 case of which they executed a writ to seize property under and is the subject of this matter.

27. On September 21, 2017, Debtor remove the state court matters which included these claims to this court to run on parallel track (case number 17-02108 doc 77)

28. On October 6, 2017, the Defendants filed a Motion for Remand and stated clearly: (17-02108 Doc 8)

   a) In the Kalkaska County Circuit Court Case, 16-12130-CZ, Mid Michigan Equestrian Center ("MMEC") was a co-plaintiff. In the Kalkaska County Circuit Court Appeal Case, 16-12167-AV (underlying District Court case 13-17182-SP-2)

This statement alone clarifies that MMEC is a co defendant which qualifies the automatic stay apply to any and all collection against Debtor and co-defendants. MMEC was a co-defendant protected under 11 U.S.1301

29. On July 13, 2017, hearing was held on *objection to claim* regarding *Debtors Objection Claim* regarding Jeanna Patterson, and the adversary matter. Debtors Attorney Don Baranski whom replaced Joni Fixel did not appear, so Debtor proceeded in Pro Per regarding the *objection to claim*. Further this court allowed Debtor until August 18, 2017, to file an answer or response to the *Plaintiffs' Adversary Complaint*.

30. Gilroy filed her answer to the adversary complaint on August 18, 2017 which included Countercomplaint-Count I Violation of the Automatic Stay and Count II sought to Set Aside a Preference. (doc 20 and 24 case 17-17-02041)

31. Hearing was held on November 16, 2017 regarding Motion to dismiss the *Debtors Counter Complaint in* the adversary matter case # 17-02041 which included issues pertaining to the seizure of assets in September of 2016. This court dismissed Debtors Counter Complaint and further stated **"this court would reserve the right for Gilroy to file an action appropriate regarding the violation of the automatic stay and preference."**

32. Debtor filed *Motion for Order to Reopen Case to permit Debtor to file Order to Show Cause* Re: Contempt against Otis and Tracy Fahl and Council Michael Corcoran for violation of automatic stay.

33. Hearing was held on June 21, 2018 regarding *Motion to Reopen Debtors Chapter 13* which was granted.

34. August 15, 2018, Debtor filed the subsequent *Motion for Order to Show Cause for Violation of the Automatic Stay and seeking Sanctions*.

35. On September 14, 2018, there was an evidentiary hearing scheduled, but was considered a status conference regarding Debtors Motion. Debtor was prepared for hearing. Mr. Corcoran stated he was in the process of getting the MMEC Ch 11 meeting of Creditors transcribed.

36. On September 20, 2018, this court filed order establishing deadlines to file witness and exhibit lists.

37. On October 10, 2018, this court sent notice of rescheduling of the evidentiary hearing to be held on November 9, 2018.

38. On November 1, 2018, just 8-days prior to the scheduled evidentiary hearing, the Creditors sought leave to take a *De Bene Esse deposition* of Mr. Fahl to preserve his testimony for the hearing. Creditor Otis Fahl, an intended witness for the hearing, will be unavailable for the hearing as he will be out of the state starting on November 7, 2018, and further stating that <u>Creditors would be harmed</u> by not being able to preserve Mr. Fahl's testimony, as <u>Mr. Fahl was one of the few direct witnesses to the events in question in this matter</u>.

39. November 2, 2018, Debtor filed *Objection to Creditors Motion for De Bene Esse Deposition*.

40. November 6, 2018, a status conference regarding the Creditors motion for De Bene Esse deposition was held, this court resolved the conflict by "Hitting the Reset Button" and rescheduling the evidentiary hearing, allowing all exhibits and witness list by Debtor and Creditor to be allowed, and further rescheduled the hearing which would allow Otis Fahl to attend the hearing which was crucial for the Creditors as Mr. Fahl was one of the few direct witnesses to the events in question in this matter.

41. Debtor submitted witness list which included the added statement: *"Debtor reserves the right to call, as part of its case, any person listed on the Defendant's Witness List or called by the Defendant's."* Otis Fahl was a listed witness.

42. Defendants Council stated that he would be able to attend the hearing on December 17, 2018. This court and Gilroy went out of their way to make this time available to Mr. Fahl to be able to attend. Mr. Fahl did not attend the hearing on December 17, 2018, he was in Mexico. Otis Fahl's not appearing in court to allow Debtor to question him as Mr. Fahl was one of the few direct witnesses to the events in question in this matter, as stated by Mr. Corcoran. This was clearly prejudicial for Debtors defense and should be held in contempt of court for the same.

## FACTUAL/PROCEDURAL ISSUES

43. August 15, 2016 *Ex Parte Motion for Entry of Order Allowing Court Officer Access to Storage Unit 101* to Execute writ to seize property of MMEC: (Exhibit 34 entered in evidentiary hearing)

   a) This matter was for case #13-17182-SP-2 of which <u>was not</u> apart of the Relief from Stay stipulated between the Creditors and Debtor on November 23, 2016.

   b) The Defendants were clearly aware that Defendant O'Connell (aka Gilroy) had filed for Chapter 13 Bankruptcy, and the automatic stay was in effect against any collection against the Debtor and would be in violation of the automatic stay.

   c) MMEC and Debtor were the named Defendants in the State Court Action.

   d) MMEC and Debtor were the named parties on the writ to seize property from July 27, 2016. The writ to seize property was a judgment entered May 23, 2016 for *"renewed" Motion for Attorney Fees* in the amount of $9,851.64. which they executed on September 1, 2016. (Exhibit 33 entered in evidentiary hearing)

   e) <u>Issues of dispute regarding *Renewed Motion for Attorney Fees*-pending appeal</u> (Exhibit 31 entered in evidentiary hearing)

   (1) This Motion in entered in case 13-17182-SP-2 of which was to regain the deed, which they did on December 17, 2015.

   (2) They were awarded attorney fees in the amount of $10,384.30 on February 9, 2015.

   (3) Debtor paid $10,384.30 satisfying the judgment and an additional $1,281.20 was paid to Officer Robbins for fees and cost on May 18, 2016.

   (4) Creditors claimed in their Renewed Motion for Attorney Fees that they had incurred $ 9,851.64 in <u>additional attorney fees and costs </u>in attempts to secure possession of the property which was billed under the land lord tenant case but submitted for judgment under the 13-17182-sp case.

(5)     This brings the amount in **judgments for attorney fees to $20,235.94** and it has been stated on the record numerous times that they are going to go back to court to claim more attorney fees. This is just unheard of and could be considered "*Unjust Enrichment.*"

(6)     Creditors stated they received $579.48 under a garnishment towards the prior attorney fee award. <u>This amount has never been credited to reduce the amount owing, as shown above.</u>

(7)     The settlement agreement/Deed in Lieu specifically states that: (Exhibit 73 entered at evidentiary hearing)

**c. Delivery of Deed in Lieu; Operation and Effect.**
i.     In the event that the Fahl's assert, claim, are awarded, or otherwise obtain any possessory or title rights or interests in the Subject Property, or the Amended Land Contract is deemed forfeited or foreclosed, through operation or effect of the Deed in Lieu, without said Deed having been first released and recorded in accordance with the terms of this Agreement, the Fahl's shall indemnify and hold MMEC harmless from all costs and damages incurred as a direct and/or consequential result, including without limitation attorney's fees and loss of business revenues. (Pg. 7 of the agreement)

(8)     The State Court case 13-17182-SP-2 was transmitted to the Circuit Court for Defendants Claim of Appeal on April 5, 2016 and was administratively closed due to bankruptcy stay on August 8, 2016.

(9)     This matter was subject to appeal (case #16-12167-AV) and administratively closed on August 16, 2016 due to automatic stay. (Exhibit 38 entered at evidentiary hearing)

(10)    The automatic stay was lifted regarding Contempt Order in the Kalkaska County District Court matter, 16-19141-LT-2, as it relates to return and installation of the heating system. However, the stay is not lifted as to the money judgment portion of the Order. It was not lifted regarding any judgments in the 13-17182-SP-2 case or the appeal case #16-12167-AV. (doc 46)

(11)    The Defendants exceeded Judge Buday's Order for Entry of Storage Unit 101 at His and Her Storage unit in Rapid City, MI. When they went to Debtors property to seize assets in Gaylord, MI that same day also violated this court's order for automatic stay. (Exhibit 36 entered in evidentiary hearing)

(12)    This was a continuation of a judicial proceeding against the Debtor to collect on a judgment which is a violation of the automatic stay.

f)    The Defendants stated in their motion that the attached affidavits of Plaintiffs establish that the items stored in Unit 101 were the items returned there and which were clearly "Ranch Property" according to the Schedules that the Non-Profit filed with the Bankruptcy Court while it was in Chapter 11. <u>**They were items owned or claimed owned by Ms. O'Connell personally.**</u> And further claimed that the Bankruptcy Schedules filed in the dismissed Chapter 11 show that the items being

stored in Unit 101 are owned by the Non-Profit Ranch. <u>They have yet to offer any proof of this to Judge Buday or this court.</u>

  (1) Items they seized from storage unit 101 were:
      i.   1-Oak desk
      ii.  2-Oak files
      iii. 3-Oak bookcases
      iv.  2-Large metal lockers

g) In the Defendants exhibit D presented at evidentiary hearing, (MMEC Chapter 11 Schedules)
    (1) Pg. 4 line 28 shows MMEC office Furniture and equipment, value $12,040.01,
    (2) line 31 refers to livestock valued at $17,000.00,
    (3) line 33 refers to farm equipment valued at $25,454.12,
    (4) line 34 refers to Hay, and line 35 refers to general equipment which is mostly made up of the Haunted House inventory stored at Jeanna Patterson's.

There is no place in these schedules that prove the ownership of the above items seized. It is reasonable to expect a business to have office furniture and equipment, but it is also reasonable for an individual to have office furniture as well.

h) <u>Issues with Otis Fahl's affidavit attached to above motion</u>
    (1) This affidavit states that Fahl Forest Products Inc. is the Plaintiff. MMEC and Debtor have **no** pending litigation of any kind with Fahl Forestry Product.

        i. **They were items owned or claimed owned by Ms. O'Connell personally. (line 6 of affidavit)**

        ii. On July 27, 2016, this Court signed a <u>New</u> Writ of Execution to Seize property to collect the Judgment against **both Defendants** we obtained for additional attorney fees in the amount of $9,851.64. (line 9 of affidavit)

        iii. The Judgment has not been satisfied, no stay or bond has been posted in the Circuit Court Appeal to prevent collection against the Ranch. Further, the Bankruptcy Stay does not apply to the Ranch. (line 10 of affidavit) This is clearly not true as the appeal was administratively closed due to bankruptcy stay (Exhibit 38 entered at evidentiary hearing)

44. Joni Fixel, State Court attorney filed Ex Parte motion to stay the sale of the seized assets on September 8, 2016, clearly stating: (Exhibit 48 entered at evidentiary hearing)

    a) Clearly outlined the items seized.
    b) The items owned by Defendant Christine O'Connell (aka Gilroy) are protected under the United States Bankruptcy Code pursuant to a current chapter 13 proceeding.
    c) A hearing should be held to determine which of the seized assets are owned by Mid Michigan Equestrian Center and should be sold and which are owned by Defendant Christine O'Connell and are therefore protected by the Bankruptcy proceedings.
    d) Irreparable harm will come if items owned by Defendant O'Connell are sold under the current order and would be a violation of the United States Bankruptcy Code.

Under MCL 600.6011 (Effect of order to stay proceedings on execution), Judge Buday errored on allowing the sale to continue.

**MCL 600.6011**

When an execution has been issued, an order to stay proceedings thereon shall not prevent a levy on property by virtue of the execution but shall only suspend a sale thereon until the decision of the proper court upon the matter.

The question of ownership is a federal question, *In Re Flynn, 200 B.R. 481 (Bankr. D. Mass. 1996)*

45. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:
    a) While there is no doubt that Mr. and Ms. Fahl acted after the August 17, 2016 bankruptcy of Ms. Gilroy, their actions were directed to assets of MMEC.
    b) First, the horses and office equipment in question were detailed in the MMEC Chapter 11 proceeding as property of MMEC.
    c) After the MMEC Chapter 11 was dismissed, Mr. and Ms. Fahl took appropriate action to seize this property as allowed under state law.
    d) After receiving payment, Mr. and Ms. Fahl waited some time as other proceedings were occurring in state court involving Ms. Gilroy.

Gilroy's bankruptcy was filed on August 7, 2016, not August 17, 2016.  MMEC bankruptcy schedules were not detailed, and more specifically as noted above when referencing the horses, the seizure from April 22, 2016 included 1 horse (MIHA) which was listed as owned by Gilroy.  Further, this court has not considered that **Gilroy paid** the judgment to reclaim the property that was seized as shown in the receipt (Exhibit 29 entered at evidentiary hearing) which would raise the question of "equitable interest" in the property at the very least.

46. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:
    a) Seeing that there was no resolution of these proceedings, Mr. and Ms. Fahl again decided to seek to recover the remaining amount of their judgment as to MMEC.

The Judgment from February 9, 2016 (for attorney fees) which was subject of first seizure was paid in full which resolved the matter. (Exhibit 11 entered with Doc 68 noted doc 68-3).

The second seizure was for a judgment that was obtained on May 23, 2016, (the subject of the seizure and this matter) long after the assets were transferred from MMEC to Gilroy on March 4, 2016.  (Exhibit 67 entered at evidentiary hearing-Affidavit of Dawn Martin)

47. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:
    a) Ms. Gilroy may have transferred the horses and office equipment to herself after the spring of 2016, but her Schedules do not report any office equipment or similar equipment that is the subject of this motion.

Gilroy did not transfer ownership of the office furniture, Gilroy is the owner of the office furniture. (see Exhibit 25 admitted in evidentiary hearing-seizure 4-21-16)

Gilroy did not transfer ownership of the horses, it was a board decision based on what was best for the horses and the business's unstable situation. The horses and the needed equipment to care for horses was sold to Gilroy, of which Gilroy paid for through reducing amount owed to Gilroy. (Exhibit 1, MMEC Schedule F)

    a) Pg. 2 of this exhibit clearly states We calculated the price that Christine paid to us when the house was purchased.

    b) Pg. G-Heading-Furnishing sale to Chris. Items that were seized are noted as:
        i. Office-1-Oak Desk (value 1500.00),
        ii. Office-2-Oak File Drawers (value 200.00),
        iii. Office-Oak bookcases-2 (Value 400.00)
        iv. School Room-1- Book Shelf (value 100.00)

The failure to list assets on the schedules does not dismiss actions in violation of the automatic stay. *Owen v. Owen, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)*. Property of the estate, therefore, includes property not identified or listed on the bankruptcy schedules.

48. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

    a) While her Schedules do disclose nine horses, the horses are not described in any detail and the MMEC filing described numerous horses owned by Ms. Gilroy, none of which are the horses named in the instant Motion.

It is not the Debtors responsibility to prove her assets when improperly seized, even if they are not listed on the schedules (itemized or otherwise), but to be clear MMEC list of horses shows that Gilroy owned 8-horses of which 2 died (Buddy and Black) and are buried on the Way Rd Farm-now Fahl's property, the Fahl's seized Miha in April 2016 of which Anne Ryan paid for following the first Seizure (of which Rick Robbins testified to), leaving 5-horses remain as to the list which was not recognized as a change in the list of horses in the Defendants exhibit.

Gilroy's schedules are accurate as to claiming ownership of 9-horses, which include:

List of horses owned by Gilroy:
1. Red-The Fahl's killed because they didn't like him
2. Levi-Seized
3. Dane-Seized
4. Cotton, listed as owned by Gilroy in MMEC Chapter 11 schedules
5. Rocky, listed as owned by Gilroy in MMEC Chapter 11 schedules
6. Whiskey
7. Julio, listed as owned by Gilroy in MMEC Chapter 11 schedules
8. Deacon (Died 2017)
9. Sierra, listed as owned by Gilroy in MMEC Chapter 11 schedules

There is a total of 9-Horses valued at auction sale prices, not value to replace. Gilroy did discuss several of the horses in MMEC Schedules. (Exhibit MMEC Schedules) Note: It was agreed that the silver pony was rightly back with the Fahl's.

48. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

> c. Debtor's Petition and Schedules listed personal property consisting of some
> horses that were listed on the Schedules and other exhibits in the Non-
> Profit's Chapter 11 noted above.

The question of ownership is a federal question, and further, Mr. Corcoran was aware that these horses were listed on my schedules as he stated in his objection to confirmation filed on 9/22/16 Stating: (doc 33)

49. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

> a) Moreover, the Debtor's complete failure to raise this issue either at the first meeting of
> creditors, held one week after the property was seized, or in her response to the Motion for
> Relief from Stay, filed eight days after the property was seized, adds further weight to the
> Court's decision.

Attorney Fixel testified at the evidentiary hearing on December 17, 2018 that she did in fact address the seizure with Mr. Corcoran, of which the Creditors (Fahl's) and Mr. Corcoran chose to ignore. Also, to note: Attorney Fixel attended the meeting of creditors on behalf of attorney Gary Huggins and did not file an appearance until September 9, 2016.

Hearing on motion for lift of stay held on October 13, 2016, Attorney Fixel stated on the record that the Fahl's seized the stall mats.

In Gilroy's continued Chapter 13 which was converted to a chapter 7 (case # 17-20100) Attorney Gary Huggins filed a response to Creditor Fahl's Motion to lift Stay (doc 30), and clearly stating that the Fahl's by and through their attorney returned to the District Court repeatedly to ask for money damages as well as convinced the District Court to seize property after the original Chapter 13 had been filed. Further, the Defendants in this matter did not act to disclose the seizure activity or reduce the amount owed following the seizure and sale of the assets of which they had plenty of opportunity, to include their objection to confirmation (doc 33) and (doc 45)

### In re Banks, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000)

> Based on [the] language of § 362(a)(1), many courts have emphasized the obligation incumbent
> upon creditors to take the necessary steps to halt or reverse any pending State Court actions or
> other collection efforts commenced prior to the filing of a bankruptcy petition, including
> garnishment of wages, repossession of an automobile, foreclosure of a mortgage or a judgment lien
> and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the
> bankruptcy petition.

> > This responsibility is placed on the creditor and not the debtor . . . because "[t]o place the
> > onus on the debtor. . . . to take affirmative legal steps to recover property seized in violation
> > of the stay would subject the debtor to the financial pressures the automatic stay was
> > designed to temporarily abate and render the contemplated breathing spell from his
> > creditors illusory." *Ledford v. Tiedge (In re Sams), 106 B.R. 485, 490 (Bankr.S.D.Ohio 1989)*

(citations omitted). See also *Mitchell v. Quality Plant Serv., Inc. (In re Mitchell), 66 B.R. 73, 75 (Bankr.S.D.Ohio 1986)* ("If one is enjoined from continuing a judicial proceeding against the debtor, one is obliged to discontinue it.").

50. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

    a) The final factor considered by the Court during the Chapter 13 proceeding is the Debtor's ultimate agreement for the entry of an order regarding the automatic stay and her subsequent dismissal of the case a few months later.

    b) None of these actions or inactions are consistent with a Debtor who was so wronged as the Debtor claimed approximately two years later at the December 17, 2018 evidentiary hearing.

The Debtors agreement regarding the lift of stay has no bearing on this matter as it did not pertain to this matter as stated above. the automatic stay was lifted as to the Contempt Order in the Kalkaska County District Court matter, 16-19141-LT-2, and as it relates to return and installation of the heating system, **the stay was not lifted as to the money judgment portion of the Order.** This order did not include a lift of stay pertaining to the 13-17182-SP-2 case of which they executed a writ to seize property under and is the subject of this matter.

Dismissal of a case does not validate actions which constituted violations of the automatic stay during the pendency of that case. See *Davis, supra, 177 B.R. at 911-12; In re Lampkin, 116 B.R. 450, 451-53 (Bankr. D.Md.1990); and In re Sports & Science Ind., Inc., 95 B.R. 745 (Bankr.C.D.Cal.1989). We note that many courts implicitly agree with this principle in holding that the automatic stay arising in prior or different cases can be enforced by a debtor in a subsequent case. See In re Schwartz, 954 F.2d 569 (9th Cir.1992)* (prior dismissed case); and *In re Ward, 837 F.2d 124, 125-26 (3d Cir.1988)* (husband's prior case). Hence, § 349(b) does not provide that the violation of the Case One stay effected by the Sale is in any sense mollified by the dismissal of that case, and the Debtor may proceed to enforce that violation here in a proceeding instituted in Case Two.

51. The Debtor sought permission to dismiss her Chapter 13 case and refile her Case under Chapter 7 of the Bankruptcy Code. Debtor has chosen not to convert her case, but rather chooses to refile due to the emerging complexities of the case. (doc 61) Of which this court granted. This should have no bearing on this court's decision as to the willful violation of the automatic stay.

    Under 11 USC §349, Effect of dismissal

    Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title [11 U. S. C. S § I09(g)].

    Subsection (a) specifies that unless the court for cause orders otherwise, the dismissal of a case is **without prejudice.** The debtor is not barred from receiving a discharge in a later case of debts that were dischargeable in the case dismissed.

Subsection (b) specifies that the dismissal reinstates proceedings or custodianships that were superseded by the bankruptcy case, reinstates avoided transfers, reinstates voided liens, vacates any order, judgment, or transfer ordered as a result of the avoidance of a transfer, and revests the property of the estate in the entity in which the property was vested at the commencement of the case. The court is permitted to order a different result for cause. The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. This does not necessarily encompass undoing sales of property from the estate to a good faith purchaser. Where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.

Due to the violation of the automatic stay, revest the property of the estate in the entity in which the property was vested at the commencement of the case and is the bases for this very motion to reopen the Debtors Chapter 13 case.

52. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

    a) At the December 17, 2018 evidentiary hearing, Mr. Robbins testified that as a court officer he is very careful to not violate the automatic stay and inquired numerous times as to the exact ownership of the property that he seized on September 1, 2016. He took the necessary steps to satisfy himself that the property in question was not owned by Ms. Gilroy, but instead by MMEC. Buttressing his understanding were the documents presented in the MMEC bankruptcy, which disclosed that the four horses at issue were MMEC horses as of November 2015, when Schedules were filed in the MMEC case. Mr. Robbins acknowledged that Mr. Gordon did tell him that he believed the horses were Ms. Gilroy's, but neither gentleman had any evidence to support Mr. Gordon's understanding.

It is unfortunate that Gilroy can not download the recording of this hearing, but Debtor specifically remember Mr. Robbins answering Gilroy's Question stating that: "he was not responsible for identifying who owned what property, and further clarified that the Oak Furniture that was taken in the first seizure was Gilroy's." It would be extremely costly to order the transcript from this hearing, as it was over 5 hours and 49 minutes, and the very reason that it is not obtainable through pacer.

53. The Court misunderstood the facts, in finding that:

    a) Mr. and Ms. Fahl were instrumental in providing financial resources and the facility, which later became part of an enterprise operated by the Mid-Michigan Equestrian Center (MMEC).

Mr. and Mrs. Fahl were never instrumental in providing financial resources and facilities at any point and time. In "Fact", they benefited significantly financially with a total of $475,429.00 in payments and improvements, as well as items kept for security in Settlement/Forbearance agreement from 2010-2015 from MMEC and Gilroy. They received $26,670.00 from Gilroy (Debtor) from the furniture contract (which the Fahl's seized in April of 2016 and again in September of 2016), for a total of $502,099.00 which the Fahl's benefited from. Gilroy was the guarantor of the "payments" on the Land contract and the deed in lieu/settlement agreement. This was not an unlimited guarantee for which the Fahl's could

seek unlimited judgments against Gilroy. (Exhibit 73 admitted in evidentiary hearing-Settlement and Forbearance Agreement)

    i. Pg. 8 d. <u>Election of Remedies</u>.

If, upon a default, the Fahl's elect to pursue recording of the Deed in Lieu, their remedies shall not exceed those that would be available to them if they had elected to bring a forfeiture action under the applicable Michigan court rules and statutes. More specifically, no deficiency judgment(s) with respect to the amounts due on the Subject Property shall be available or entered against MMEC or O'Connell. If the Fahl's elect to pursue foreclosure or other civil action in response to a breach or default, they shall do so to the exclusion of any forfeiture remedies and may not seek or cause recording of the Deed in Lieu. Provided, however, that this election of remedies shall not be construed to limit any party's ability to enforce the remaining terms of this Agreement (including, without limitation, the attorney's fees provision of section 10 in the event of a default under this Agreement) or to bring a separate and independent action upon a default under the Tax Note, the payment obligations for which shall hereinafter be governed by the terms of the following Section 5 of this Agreement.

The Fahl's elected to exercise the deed in lieu remedy of which eliminates the right to attorney fees, of which was under appeal, and further should not have been able to sell under MCL 600.06011, but clearly have been able to exercise both remedies in this matter, as the District Court judge has allowed.

<u>MCL 600.6011</u>
Effect of order to stay proceedings on execution-When an execution has been issued, an order to stay proceedings thereon shall not prevent a levy on property by virtue of the execution but shall only suspend a sale thereon until the decision of the proper court upon the matter.

54. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

    a) The Debtor filed a response to the Motion for Relief from Stay of Mr. and Ms. Fahl. This pleading did not raise any issue as to the horses or the particular items of office equipment that are now the subject of the Debtor's motion.

It is true that the response to Motion for Relief from stay which was filed by Ms. Fixel does not reference the assets seized, but as Ms. Fixel testified in court on December 17, 2018, she was not a bankruptcy attorney, and relied on Gary Huggins as he was in communication with the Trustee regarding the violation.

Ms. Fixel filed an appearance in this matter on September 9, 2016, the same day as the response to Motion for lift of Stay to be able to appear on Gary Huggins behalf, as he lives in Florida and is the Debtor bankruptcy attorney, as Ms. Fixel testified to on December 17, 2018.

<u>In re Stringer Case No. 17-51730 (Bankr. S.D. Ohio May. 21, 2018)</u>

§ 362 of the Bankruptcy Code is clear that a debtor, the debtor's assets, and the assets of the bankruptcy estate, are protected under the umbrella of the automatic stay. See 11 U.S.C. § 362. Its reach is intentionally broad, far reaching and pervasive. See 3 COLLIER ON BANKRUPTCY P. 362.03 (16th ed. 2016) (noting the stay's "extremely broad" scope). Section 362 does not except from, qualify, or compromise its protection of undisclosed assets or assets procured through operation of a proprietorship or use of a trade name. See generally 11 U.S.C. § 362.

Placing the burden on the debtor to take some affirmative action to void or invalidate a stay violation flies in the face of the primary purpose of the automatic stay. For some debtors, taking any action — no matter how seemingly routine — is burdensome, financially and emotionally. In this Court's opinion, it is much more equitable, and in keeping with the purpose behind the stay, to place the burden on the creditor to take affirmative action to validate an otherwise invalid act.

As noted above in numerous areas, Gilroy and or her attorney did in fact raise the issue to include Mr. Corcoran, and this very court reserved my right to file this very motion.

55. This court errored as to the fact that Mr. Gordon did not have any additional information or documentation is clearly prejudicial and unfair to expect that Mr. Gordon would have documentation or be prepared for the Fahl's and Court officer Robbins, as the automatic stay operates as an injunction against the Creditor to harass the Debtors per the automatic stay. The Fahl's showing up at Debtors property clearly was a violation of the automatic stay.

    a) Mr. Gordon was at the horse stable when the horses were seized, and he advised Mr. Robbins that he understood that these horses were owned by Ms. Gilroy, but he was not given any additional information or documents to support his understanding.

*"The responsibility is placed on the creditor to address the continuing violation of the automatic stay because to place the burden on the debtor to undo the violation would subject the debtor to the financial pressures the automatic stay was designed to temporally abate." Johnston v. Parker (In re Johnston), 321 B.R. 262,283 (D. Ariz. 2005).*

56. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

    a) At the December 17, 2018 evidentiary hearing, Mr. Robbins testified that as a court officer he is very careful to not violate the automatic stay and inquired numerous times as to the exact ownership of the property that he seized on September 1, 2016.

    b) He took the necessary steps to satisfy himself that the property in question was not owned by Ms. Gilroy, but instead by MMEC.

    c) Buttressing his understanding were the documents presented in the MMEC bankruptcy, which disclosed that the four horses at issue were MMEC horses as of November 2015, when Schedules were filed in the MMEC case.

    d) Mr. Robbins acknowledged that Mr. Gordon did tell him that he believed the horses were Ms. Gilroy's, but neither gentleman had any evidence to support Mr. Gordon's understanding.

It is unfortunate that Gilroy cannot download the recording of this hearing, but Debtor specifically asked Mr. Robbins if it was his job to determine who owned what property, and his testimony was: "he was not responsible for identifying who owned what property, and that he executed the orders that was given to him, further clarified that the Oak Furniture that was taken in the first seizure was Gilroy's." As stated above, MMEC and the Debtor were listed on the writ to seize.

It would be extremely costly to order the transcript from this hearing, as it was over 5 hours and 49 minutes, and the very reason that it is not obtainable through pacer.

57. There is clear error/and or misunderstanding of facts/and or law as to this courts Analysis:

   a) Her current position was not stated throughout September, October, and November 2016 when the parties were negotiating the Motion for Relief from Stay of Mr. and Ms. Fahl and the Court was considering the position of the respective parties.

   b) The final factor considered by the Court during the Chapter 13 proceeding is the Debtor's ultimate agreement for the entry of an order regarding the automatic stay and her subsequent dismissal of the case a few months later.

   c) None of these actions or inactions are consistent with a Debtor who was so wronged as the Debtor claimed approximately two years later at the December 17, 2018 evidentiary hearing.

As stated above in the procedural heading, this matter has been brought up over and over and over, and further, this court preserved Debtors right to bring this action of which Gilroy has timely filed and is the subject of this matter. If there were any delays, it was on the Defendants side which requested the hearing be rescheduled twice.

It is not the responsibility of Gilroy to address the issue of a violation of the automatic stay. When the matter was addressed multiple times:

   a) Ms. Fixel spoke to Mr. Corcoran following the Meeting of Creditors, bringing the violation to his attention, Mr. Corcoran replied that there was no seizure, of which Ms. Fixel testified to in court on December 17, 2018. The responsibility to undo and address the violation was on the Defendants.

   b) Ms. Fixel filled Ex Parte motion to stay the sale, the burden again on the Defendants.

   c) Attorney Gary Huggins contacted trustee regarding the assets seized. (Exhibit 52 entered in the evidentiary hearing)

   d) There should not have been a sale under MCL 600.0601.

The fact that Gilroy's Bankruptcy attorney did not act as he should have, or maybe even the trustee did not act accordingly should not deprive Debtors rights to a fresh start and all the protection under the Bankruptcy Code, nor does it mean that a violation did not occur.

### CLEAR ERROR OF LAW

### VIOLATION OF THE AUTOMATIC STAY UNDER SECTION 362

63. Chapter 13 expressly stays proceedings of creditors against co-debtors of the petitioner, 11 11 U.S.C. § 1301(a)

   (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt

64. *In re Sharon 200 B.R. 181, 198 (Bankr. S.D. Ohio 1996)*

Section § 362(a) clearly begins with the premise that the filing of a bankruptcy petition operates as a stay of all creditor activity not specifically excepted in § 362(b). Unless the stay does not apply pursuant to § 362(b), or has terminated pursuant to § 362(c), the provisions of the Code require the creditor, not the debtor, to take affirmative action pursuant to § 362(d) to obtain relief from stay or adequate protection by filing a request in the bankruptcy court. In the absence of affirmative action on the part of the creditor to utilize § 362(d) to obtain relief from stay, § 362(a) prevents the very creditor action that would be permitted if the court were to grant a creditor's request for relief. Sections 362(d) and (e) provide that at the request of a party in interest, and after notice and a hearing, the court shall, if certain conditions are met, grant relief from the stay by terminating, annulling, modifying or conditioning such stay within thirty (30) days after a request for relief has been filed. Upon request of a party in interest, § 362(f) provides that the court can grant relief from stay even without holding a hearing where certain conditions exist. In the absence of such affirmative action by a creditor, the provisions of § 362(a) apply.

Congress placed the court at the vortex of the bankruptcy proceedings and the provisions of the automatic stay are designed as the initial channels that regulate the flow of economic consequences, which, if left unchecked or diverted by extra judicial determinations, would drown a debtor's opportunity for a fresh start and would destroy a creditor's opportunity to receive its hierarchically ordered claim to a pro rata share of the bankruptcy estate.
Unless a particular proceeding is specifically designated an exception to the automatic stay (§ 362(b)), a creditor is obligated to obtain relief from stay prior to taking any action involving property of the estate. To the extent creditors fail to do so, they act at their own peril.

65. Gilroy listed creditor Fahl's in her schedules and included repayment under the chapter 13 repayment plan. (Doc 36) filed on 9/23/16, of which listed the Fahl's under:

11 U.S. Code § 1322 (b) (1) which states:

(b) Subject to subsections (a) and (c) of this section, the plan may—
(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

The Defendants denied Gilroy of the opportunity to reorganize and finalize the process of which she was afforded under the code.

66. The failure to recognize Gilroy's interest (ownership) of the assets seized creates a due process claim based on the *Fourteenth Amendment* of which requires the provision of due process when an interest in one's *"life, liberty or property"* is threatened. The Property Interest under the *"entitlement" doctrine"*.
—The expansion of the concept of "property rights" beyond its common law roots reflected a recognition by the Court that certain interests that fall short of traditional property rights are nonetheless important parts of people's economic well-being. For instance, where household goods were sold under an installment contract and title was retained by the seller, the possessory interest of the buyer was deemed sufficiently important to require procedural due process before repossession could occur.

67. Subsequently, however, the Court held squarely that, because "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse action." Indeed, any other conclusion would allow the state to destroy virtually any state-created property interest at will. Vitek v. Jones, 445 U.S. 480 (1980) Quoted:

> *(b)* Because prisoners facing involuntary transfer to a mental hospital are threatened with immediate deprivation of liberty interests, and because of the risk of mistaken transfer, the District Court properly determined that certain procedural protections, including notice and an adversary hearing, were appropriate in the circumstances present in this case. *Pp. 445 U. S. 495-496.*

## JURISDICTION

68. <u>28 USC §§ 1334</u>

   (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

   (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

   (e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

       (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate;

64. <u>28 USC §§ 157</u>

   (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

   (b)

       (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

       (2) Core proceedings include, but are not limited to—

       (G) motions to terminate, annul, or modify the automatic stay;

69. *Central Virginia Community College v. Katz, 546 U.S. 356 (2006)*

   The Supreme Court identified three (3) "[c]ritical features" of the bankruptcy court's in rem jurisdiction:

   The exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts. 546 U.S. at 363-64.
   A proceeding involving the enforcement of the automatic stay constitutes a "critical feature" in the exercise of in rem bankruptcy jurisdiction in that it facilitates the exercise of the court's exclusive jurisdiction over the debtor's property.

64. *In Re Flynn, 200 B.R. 481 (Bankr. D. Mass. 1996)*

What constitutes property of the estate is a federal question to be resolved under § 541 but recognizes "the traditional role of the states in creating and defining the underlying property interests and commercial arrangements to which bankruptcy law applies." *Selby v. Ford Motor Co., 590 F.2d 642, 646 (6th Cir.1979)*. The nature and extent of the debtor's interest is determined by reference to nonbankruptcy law. *Butner v. United States, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)*.

70. This court quoted *In re Daniels, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997) (quoting In re Wagner, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987))*

A party violates the automatic stay by taking any action prohibited by Section 362(a) after receiving notice of a bankruptcy filing. Id. "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay.*" In re Daniels, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997)* (*quoting In re Wagner, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)*)

*In re Wagner, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987))*

Prior to the enactment of 11 U.S.C. § 362(h), parties aggrieved by a violation of the automatic stay ordinarily invoked the remedy of civil contempt. See *Kennedy*, The Automatic Stay in Bankruptcy, *11 U. Mich. J.L.Reform 177, 259-66 (1977)*.

In order for a party to be held in civil contempt, a court must find that the party violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conduct. *Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47 (2d Cir.1976), cert. denied, 429 U.S. 1093, 97 S. Ct. 1107, 51 L. Ed. 2d 540 (1977)*

*Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47 (2d Cir.1976), cert. denied, 429 U.S. 1093, 97 S. Ct. 1107, 51 L. Ed. 2d 540 (1977)*

In bankruptcy contexts, "the term `property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. *Segal v. Rochelle 382 U.S. 375, 379, 86 S. Ct. 511, 515, 15 L.Ed.2d 428 (1966)*.

Indeed, we think that the *Segal* decision makes it clear that FMI's interest under the deed of trust was a property interest for the purposes of the bankruptcy statutes and therefore conferred jurisdiction over the Jackson condominium project to the New York bankruptcy court. *Segal, supra, at 379-81, 86 S.Ct. 511.*

71. Where other defendants exist in lawsuit, you also have the option of dismissing the debtor-defendant from the lawsuit, proceeding with the litigation as to the other defendants and never filing a proof of claim against the debtor.

72. Gilroy's plan proposed payment to the Fahl's which would have well exceeded the amount that the received in the sale of the seized assets, which left a large amount owing and they are still seeking the full payment in the adversary case (17-02041) with no reduction of the amount they received from the sale.

73. This court failed to recognize the ownership of any other assets that were seized to include, t-post, 3-step mounting block, Gilroy's stall mats, tool chest, outdoor furniture, and the lockers. The fact that the items seized were not itemized does not mean that they were not included or could not have been amended to be included. Gilroy was in an impossible situation at the time of the filing of this

bankruptcy, of which all of her assets were locked in multiple storage units at His and Her storage located in Rapid City MI.

74. This court failed to recognize that the Defendants failed to address the seizure of the assets, reduce the amount that they were claiming in there judgments over and over, claiming that Gilroy owed the same amount of the judgment, even though they had seize her assets, sold that at sale, and then refused to apply the money to the judgment.

**MANIFEST INJUSTICE**

75. Mr. Fahl's last minute decision to vacation in Mexico created a violation of due process as Confrontation and Cross-Examination.

> "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. *Goldberg v. Kelly, 397 U.S. 254, 269 (1970). See also ICC v. Louisville & Nashville R.R., 227 U.S. 88, 93–94 (1913). Cf. § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d).*

In this case, Gilroy was unable to cross examine Otis Fahl, which Counsel clearly stated in his motion for leave to take a De Bene Esse deposition *"it was crucial for the Creditors as Mr. Fahl was one of the few direct witnesses to the events in question in this matter."*

76. Gilroy was unable to reorganize and was forced to file under chapter 7, as the Defendants deprive Gilroy of being able to reestablish her 20-year profession as an individual by taking her horses.

77. Gilroy was unable to question the remaining witnesses on her witness list to prove her case, as well as introduce all evidence, or provide a closing argument.

78. The additional creditors in Debtors schedules were denied repayment, by Debtor's inability to reorganize.

79. This court has failed to recognize the harm that has come to the Debtor, and the Defendants continued harassment towards the Debtor, of which the Debtor came to this court to protect her from.

**CONCLUSION**

The litigation between these parties has been ongoing since mid-2015 and is extensive and confusing to say the least. False, misleading, and scurrilous statements made by the defendants and council only adds to the confusion. As Attorney Corcoran has partially reported, there is civil litigation brought by Ms. Gilroy and MMEC against Otis and Tracy Fahl, Jeanna Patterson, and certain other board members which includes Counts of Breach of Fiduciary Duty, Tortious Interference with a Business Relationship or Expectancy, Civil Conspiracy, and Concert of Action currently being heard in State Court. Jeanna Patterson instigated a false police report of over 100 pages that also included false claims by Tracy Fahl. The only charge to come from all of that was one count of insurance fraud against Gilroy, of which she was found not guilty. Interesting note:

the insurance claims raised in State Court were not the same claims brought out in the MMEC bankruptcy proceeding. MMEC has a pending case with the Attorney General.

For clarification, Mid Michigan Equestrian Center, Inc. was incorporated as a nonprofit in 2001 and operated in St. Johns, Michigan, until 2010 when the business relocated to 5629 Way Rd., Kalkaska, Michigan. The property was being purchased by the nonprofit and was operated by a Board of Directors (Ms. Gilroy was an employee of the nonprofit.) The property was obtained through a lease/purchase agreement with Otis and Tracy Fahl. At that time, Ms. Gilroy personally purchased furniture from the Fahl's – aka "The Furniture Contract." This agreement included an oak desk, file cabinets, and bookshelves that were originally housed in Otis Fahl's office on Way Road, and the $26,670 due was paid in full. This furniture was first seized on 6/22 for satisfaction of a judgement of $10,384.30 as the Fahl's indicated that this property was owned by Christine O'Connell (Gilroy.) The judgement and fees were paid to Court Officer Rick Robbins and the property was returned to His & Her Storage Unit 101 by Rick Robbins and Otis Fahl. The Fahl's returned to this same storage unit and seized the same exact property again along with other things, fraudulently claiming to Rick Robbins falsely claimed that it was shown on the Chapter 11 Bankruptcy filing of MMEC in November 2015. The Fahl's knew at that time that the horse they most wanted had been sold to another party.

MMEC is not defunct, as Mr. Corcoran claims. All documents are filed and in place and will remain in place in hopes that if there is a money judgement from the civil action, debtors can be repaid. If not, a decision will be made at that time whether to close the business.

There was an automatic stay in place by this court to take any further action to collect on any judgment or continuation of any judicial proceeding. Mr. Corcoran stated that the State Court matters were uncollectable without this courts blessing at hearing held October 16, 2016 in this court.

In regard to the horses that were illegally seized: both MMEC and Gilroy were facing eviction. MMEC did not have the funds to care for or house the horses. It was a joint decision between the MMEC Board of Directors and Gilroy that she could purchase the horses, which she did in March 2016. Gilroy did not owe an explanation of ownership of assets or transfers, as the judgment that they executed a writ on was from May 23, 2016 which was after the sale, and the prior judgment for attorney fees was paid in full. Further the writ of execution was issued on a case that was not included in the order to lift stay and should have no bearing.

The Defendants were aware of Debtors Bankruptcy filing, and the bankruptcy stay as early as August 8, 2016. They admitted that they could not pursue any collection on judgments in the State Court without this courts blessing, and Gilroy was seriously harmed by their actions as stated in her motion. This court had exclusive jurisdiction regarding all of debtor's assets and determination of her assets. The Fahl's clearly violated the automatic stay when they entered Gilroy's property and seized assets without this court's

permission. Gilroy had a right to reorganize, and a right to a fresh start which she was deprived of when the foundational tools of her trade were taken – her horses.

Further, when this court stated in his opinion that this matter this court preserved her right to do so at a hearing held on November 16, 2017.

Clearly there are professional code of ethic that require an attorney to be truthful and forth coming in their pleadings and testimony to the court, as the courts rely on these pleadings and statements made to be truthful to help determine each case. This court nor any other court can litigate and/or fact check each mater before them. Wherefore, this court rely on the pleadings, case law and other factors that have been presented to them as true, in the context it was presented, as did Judge Buday.

I ask this court to do the same in this matter for the Debtor as a pro se litigant. There can not be more than one truth. There can be understanding, question of law, and misunderstandings, but not more than one truth.

**WHEREFORE**, the Debtor Respectfully requests this Court:

a. Reconsider its decision denying the Debtor's Motion for Order to Show Cause Against Creditors and Contempt and Assessed Sanctions, and damages for Violating the Automatic Stay.

b. Grant Debtors Motion, for show cause, and find the Defendants in Contempt of Court for will full violation of the automatic stay, and schedule hearing on damages.

c. Any further relief this court deems appropriate.

Respectfully submitted,

Date 3/26/19

Christine M. Gilroy
3136 Turtle Lake Rd.
Gaylord, MI 49735

UNITED STATES BANKRUPTY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:                                             Case No. 16-21419

Christine M. Gilroy,                               Chapter 13

Debtor                                             Hon. Daniel S. Opperman

"Proposed Order"
**ORDER GRANTING DEFENDANTS MOTION FOR RECONSIDERATION**

**This MATTER** having come before the Court upon Debtor's motion for
Reconsideration from Order entered on 3/12/19 denying Debtors Motion for order to
show cause why creditors and their attorney should not be held in contempt and assessed
sanctions for violating the automatic stay and to compel turnover of property of the
estate pursuant to 11 U.S.C. §362 and for damages costs and sanctions for willful
violation of the automatic stay.

**NOW WHEREFORE:**

**Debtors motion for Reconsideration is Granted and Further:**

**IT IS HEREBY ORDERED** that Creditors Tracy and Otis Fahl as well
as Attorney Michael Corcoran, are deemed to be in willful violation of the automatic
stay pursuant to 11 USC §362 et. seq.

**IT IS FURTHER ORDERED** that Creditors Tracy and Otis Fahl as well
as Attorney Michael Corcoran, are deemed to be in willful violation of the automatic
stay pursuant to 11 USC §362 et. seq.

**IT IS FURTHER ORDERED** that Creditors Tracy and Otis Fahl as well
as Attorney Michael Corcoran shall **IMMEDIATELY** return all property at the time
of the 9/1/16 seizure within 24 hours of the date of this Order, without any further
cost(s) to Debtor. Or in the alternative, pay the itemized value of $37,476.00.

**IT IS FURTHER ORDERED** that Creditors Tracy and Otis Fahl as well
as Attorney Michael Corcoran shall pay damages for emotional distress, lost wages and
business opportunities.

**IT IS FURTHER ORDERED** that this matter shall be set for hearing on _____ at before the Honorable Judge Opperman for the sole issue to determine an appropriate award of actual damages, damages for emotional distress, lost wages and business opportunities, and punitive damages in this matter pursuant to 11 U.S.C. §362(k).

**\*\*\*PROPOSED ORDER\*\*\***

Date: _____                    _____
                                           Daniel S. Opperman
                                           United States Bankruptcy Judge

Approved, SCAO

| STATE OF MICHIGAN<br>87-B   JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT | ORDER FOR<br>ADMINISTRATIVE CLOSING<br>DUE TO BANKRUPTCY STAY | CASE NO.<br>13-17182-SP-2 |
|---|---|---|

Court address                                                                        Court telephone no.

605 M Birch Street, Kalkaska, MI 49646                                          (231) 258-9031

**NOTE: Do not use this form in domestic relations cases.**

| Plaintiff name(s) and address(es)<br>Otis Fahl, III<br>Tracy Fahl | | Defendant name(s) and address(es)<br>Mid Michigan Equestrian Center, Inc. & Christine<br>O'Connell |
|---|---|---|
| Plaintiff(s) attorney, bar no., address, and telephone no.<br>Michael J. Corcoran (P41254)<br>201 State Street<br>Charlevoix, MI 49720<br>(231) 4373199 | v | Defendant(s) attorney, bar no., address, and telephone no.<br>Joni M. Fixel (P56712)<br>Fixel and Nyeholt, PLLC<br>4084 Okemos Road, Ste B<br>Okemos, MI 48864<br>(517) 332-3390 |

This case has been stayed in bankruptcy.

| Bankruptcy petition no.<br>16-21419 | United States District Court<br>Eastern District of Michigan |
|---|---|

**IT IS ORDERED:**

1. This case is closed for administrative purposes without prejudice.

2. This closing does not constitute a dismissal or a decision on the merits.

3. When the bankruptcy stay has been removed this case may be reopened on motion of any party.

8-8-16
Date

Judge   Lynne M. Buday   08/08/2016   P35771   Bar no.

MC 300 (3/11)   **ORDER FOR ADMINISTRATIVE CLOSING DUE TO BANKRUPTCY STAY**

B6F (Official Form 6F) (12/07) - Cont.

In re    **Mid Michigan Equestrian Center, Inc.**                                    Case No.   **15-05571-jwb**
                                                      Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Brandt, Fisher Alward & Roy PC PO Box 5817 Traverse City, MI 49696-5817 | - | | | | | | 3,608.50 |
| Account No. | | | | | | | |
| C&C Publishing, Inc. 8415 Hogam Road Fenton, MI 48430 | - | | | | | | 205.00 |
| Account No. | | | | | | | |
| Christine O'Connell 5629 Way Road Rapid City, MI 49676 | - | | | | | | 349,550.65 |
| Account No. | | | | | | | |
| Christmas Decor Traverse City 1426 Trade Center Drive Traverse City, MI 49686 | - | | | | | | 4,542.73 |
| Account No. | | | | | | | |
| Consumer Energy 821 Hastings St. Traverse City, MI 49686 | - | | | | | | 390.84 |

Sheet no. __1__ of __8__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page)    358,297.72

*Exhibit 1*

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com

B6B (Official Form 6B) (12/07) - Cont.

In re __Mid Michigan Equestrian Center, Inc.__                                    Case No. ___15-05571-jwb___
                                        Debtor

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | | **Customer List (value based on monthly income derived per month)** | - | 5,000.00 |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **Office Furniture and Equipment $12,040.01 Less Depreciation ($2,579.08) Balance Sheet Value $9,460.93** | - | 9,460.93 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | **Included above in item #28.** | - | 1.00 |
| 30. Inventory. | X | | | |
| 31. Animals. | | **Livestock $17,000.00 Less Depreciation ($1,726.00) Balance Sheet Value $15,274.00** | - | 15,274.00 |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | | **Farm Equipment $25,454.12 Less Depreciation ($2,579.08) Balance Sheet Value $7,805.94** | - | 7,805.94 |
| 34. Farm supplies, chemicals, and feed. | | **Hay bales (800 x $4.00)** | - | 3,200.00 |

|  | Sub-Total > | 40,741.87 |
|---|---|---|
|  | (Total of this page) | |

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                                                        Best Case Bankruptcy

B7 (Official Form 7) (04/13)                                                                                                                                    5

### 11. Closed financial accounts

None ☐   List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |
| Chase Bank | Account Number: 6721 | Date of Closing: 6/2015 |
| Chemical Bank | Checking Account Number: 8066 | Account Closed: 9/2015 |

### 12. Safe deposit boxes

None ■   List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

### 13. Setoffs

None ■   List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

### 14. Property held for another person

None ☐   List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |
| Tori Gilroy 5629 Way Road Rapid City, MI 49676 | 3 Horses named Annie, Boone, and Sinster | Debtor's Farm |
| Katie Gilroy 5629 Way Road Rapid City, MI 49676 | 1 Horse named Commanche | Debtor's Farm |
| Natalie Dietrich 5397 Wilhelm Rd Rapid City, MI 49676 | 1 Horse named Lady. | Debtor's Farm |
| Christine O'Connell 5629 Way Road Rapid City, MI 49676 | 7 Horses named: Black, Buddy, Sierra, Rocky, Cotton, Julio and Miha; Tack, and other equipment | Debtor's Farm |

B6G (Official Form 6G) (12/07)

In re __Mid Michigan Equestrian Center, Inc.__        Case No. __15-05571-jwb__

Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| Christine O'Connell<br>5629 Way Road<br>Rapid City, MI 49676 | Christine O'Connell is allowed possession and use of Real Estate, Residence, and Facilities at 5629 Way Road, in Rapid City, Michigan, for her residence and her horses and there care. |
| Christine O'Connell<br>5629 Way Road<br>Rapid City, MI 49676 | Written Horse Lease dated 1/1/2010 for one Percheron/Thoroughbred known as Miha.<br><br>Written Horse Lease dated 1/1/2010 for one Pony known as Sierra.<br><br>Verbal Horse Lease for 5 Horses: Black, Buddy, Rocky, Cotton, and Julio |
| Jeanne Talymi<br>5397 Wilhelm Rd<br>Rapid City, MI 49676 | Horse Boarding Agreement (co-signed with Natalie Dietrich) dated 8/15/2014 for Lady, a Mare Haflinger/Quarterhorse; $182.00 per month for Pasture Board with Shelter, Grain, rotational worming with spring fecal check, and Farrier visits. |
| Natalie Dietrich<br>5397 Wilhelm Rd<br>Rapid City, MI 49676 | Horse Boarding Agreement (co-signed with Jeanne Talymi dated 8/15/2014 for Lady, a Mare Haflinger/Quarterhorse; $182.00 per month for Pasture Board with Shelter, Grain, rotational worming with spring fecal check, and Farrier visits. |
| Otis and Tracy Fahl<br>9677 Delbert Rd.<br>South Boardman, MI 49680 | Land Contract |
| Tori Gilroy<br>5629 Way Road<br>Rapid City, MI 49676 | Horse Boarding Agreement dated 9/3/2014 for Annie, a Mare Quarterhoorse; $142.50 per month for Pasture Board with Shelter, Grain and rotational worming with spring fecal check.<br><br>Horse Boarding Agreement dated 9/3/2014 for Boonie, a Mare Quarterhoorse; $285.00 per month for Pasture Board with Shelter, Grain and rotational worming with spring fecal check. |
| Tylor Gilroy<br>5629 Way Rd. NW<br>Rapid City, MI 49676 | Camper on Debtor's Property - Verbal Agreement |

__0__

_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com       Best Case Bankruptcy